**GIBSON, DUNN & CRUTCHER LLP**
Michael A. Rosenthal (MR-7006)
Janet M. Weiss (JW-5460)
Matthew K. Kelsey (MK-3137)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Proposed Attorneys for the Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
IN RE: : Chapter 11
:
ALMATIS B.V., *et al.*, : Case No. _____
:
      Debtors. :
: Joint Administration Requested
:
---------------------------------------------------------------x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
(A) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR
DISCONTINUING SERVICES TO, OR DISCRIMINATING AGAINST, THE
DEBTORS ON ACCOUNT OF PREPETITION INVOICES; (B) DETERMINING
THAT THE UTILITIES ARE ADEQUATELY ASSURED OF FUTURE
PAYMENT; (C) ESTABLISHING PROCEDURES FOR DETERMINING
REQUESTS FOR ADDITIONAL ASSURANCE; AND (D) PERMITTING
<u>UTILITY COMPANIES TO OBJECT TO SUCH PROCEDURES</u>**

      Almatis B.V. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "***Debtors***" and each, a "***Debtor***"), submit this motion (the "***Motion***") for entry of interim and final orders substantially in the form annexed hereto as ***Exhibit A*** and ***Exhibit B*** (the "***Interim Order***" and "***Final Order***") pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "***Bankruptcy Code***"): (a) prohibiting utility companies from altering, refusing, or discontinuing utility services to, or discriminating against, the Debtors on account of any outstanding amounts for services rendered prepetition, or any

purported inadequacy of the Debtors' proposed adequate assurance; (b) determining that the utility companies have received adequate assurance of payment for future utility services; (c) approving procedures whereby the utility companies may request additional or different assurances beyond those set forth in this Motion; and (d) approving procedures for resolving objections by the utility companies. In support thereof, the Debtors respectfully represent:[1]

## BACKGROUND

1. On the date hereof (the "***Petition Date***"), each of the Debtors commenced cases (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1. The Debtors, together with their non-debtor affiliates (collectively, the "***Almatis Group***"), are a global leader in the development and production of premium specialty alumina materials. Alumina, which is derived from bauxite (an ore rich in aluminum oxide), is the primary feedstock for producing specialty alumina materials. Alumina is a thermal and electrical insulator, is exceptionally hard, exhibits low heat retention, and has a high specific heat capacity. The Almatis Group has developed manufacturing processes to modify the composition and physical properties of alumina, including its chemical and crystal structure, to maximize alumina's desirable characteristics for use in a variety of specialized industrial applications.

2. End uses for the Almatis Group's alumina materials include the production of refractories. Refractories are materials designed to withstand extremely high temperatures

---

[1] A description of the Debtors' business and the reasons for filing these Chapter 11 Cases is set forth in the Declaration of Remco de Jong in Support of the Debtors' Chapter 11 Petitions and First Day Motions and in Accordance with Local Rule 1007-2, sworn to on April 30, 2010 (the "***De Jong Declaration***"). This Motion is supported by the De Jong Declaration.

2

without softening, changing shape, conducting heat, or becoming reactive. As such, refractories are used to protect industrial equipment from the damaging effects of heat, wear, chemicals, impact, and erosion. Other applied uses of specialty alumina materials include the production of ceramics, glass, cement, petrochemicals, non-ferrous metals, electronics, paper, plastics, and carpets.

3. The Almatis Group operates through two major business segments: Refractory, Ceramics, and Polishing ("**RCP**"); and Specialty Hydrates ("**SH**"). RCP is the Almatis Group's primary business segment. The RCP segment provides specially formulated alumina products for use in manufacturing refractories. The refractories are incorporated into industrial equipment—such as crucibles, kilns, incinerators, ladles, troughs, and flow control pieces—to extend its useful life. Almatis products are also key materials used for the production of standard and technical ceramics and for polishing applications. The SH segment produces fine precipitated hydrates, ultra white hydrates, and ground Bayer hydrates. SH products enhance brightness, are flame-retardant, and suitable for use as fillers. End uses for SH products include insulation for wire and cable, certain automobile components, paper, synthetic marble, and flame-retardant plastics.

4. The Almatis Group is geographically diverse, with operations in the United States, The Netherlands, Germany, China, India, and Japan. The Almatis Group operates nine production facilities, four of which are located in the United States. The Almatis Group employs approximately 850 employees, of which approximately 300 are employed in the United States.

5. The Almatis Group is a privately-held company resulting ultimately from a spin-off from its former parent company, Alcoa, Inc. The Debtors comprise the U.S. and

European operations of the Almatis Group's business. The Debtors have approximately $1.05 billion in secured debt. In 2009, the Almatis Group's revenue totaled approximately $400 million.

2. Prior to the Petition Date, the Debtors solicited votes with respect to the *Joint Prepackaged Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code*, dated April 23, 2010 (including all exhibits and supplements, the "**Plan**") through their *Disclosure Statement With Respect to Joint Prepackaged Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code*, dated April 23, 2010 (including all exhibits and supplements, the "**Disclosure Statement**"), each filed contemporaneously herewith. Before soliciting votes on the Plan, the Debtors reached an agreement with certain senior secured lenders holding more than two-thirds in amount of the Senior Lender Claims (as defined in the Plan) on the terms of the restructuring embodied by the Plan that will reduce the Debtors' level of financial indebtedness and implement a workable capital and corporate governance structure for the Debtors. These lenders executed a Plan Support Agreement that binds them to support and vote to accept the Plan, subject to the terms of the Plan Support Agreement. By virtue of the Plan Support Agreement, the Debtors believe that accepting votes from holders of approximately 75% in amount of the Senior Lender Claims will be received by the voting deadline of May 7, 2010. If confirmed, the Plan will reduce the Debtors' aggregate bank debt to approximately $415 million and all general unsecured claims will be paid in full. By separate motion, the Debtors are requesting a hearing to confirm the Plan within 41 days of the Petition Date.

## JURISDICTION AND VENUE

3. The Court has jurisdiction of these Chapter 11 Cases and to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## DESCRIPTION OF UTILITY SERVICES

4. In the normal course of their businesses, the Debtors obtain traditional utility services related to the day-to-day operation and/or maintenance of their United States facilities from approximately 32 different utility providers (each, a "*Utility Company*" and collectively, the "*Utility Companies*"), for natural gas, electricity, telephone, sewer, sanitation, and other services (the "*Utility Services*"). The Utility Companies include, without limitation, the entities set forth on the list attached hereto as *Exhibit C* (the "*Utility Companies List*").[2] Debtors have consistently made payments to the Utility Companies on a regular and timely basis. To the Debtors' knowledge, there are no material defaults or arrearages with respect to the Debtors' undisputed invoices for Utility Services, other than the payment interruptions that may be caused by the commencement of these Chapter 11 Cases.[3]

5. Uninterrupted Utility Services are essential to the continued operation of the Debtors' businesses and, consequently, to the success of their Chapter 11 Cases. The Debtors maintain large manufacturing operations which depend on the constant and reliable provision of Utility Services. A termination of or disruption in Utility Services would significantly disrupt

---

[2] The inclusion of any entity on, or any omission of any entity from, the Utility Companies List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve their rights with respect thereto.

[3] The Debtors' proposed treatment of non-U.S. utility companies is set forth in the Debtors' Motion for Interim and Final Orders Authorizing (A) Payments of Prepetition Obligations Owed to Foreign Creditors, and (B) Financial Institutions to Honor and Process Related Checks and Transfers, filed concurrently herewith.

the Debtors' businesses and could reduce their revenue and profits, thereby jeopardizing the Debtors' chances for a successful reorganization. Accordingly, the relief requested herein is necessary and in the best interests of the Debtors' estates and their creditors.

## RELIEF REQUESTED

6. Section 366 of the Bankruptcy Code prohibits a utility company, within the first thirty days after the filing of a chapter 11 case, from altering, refusing, or discontinuing services to, or discriminating against, a debtor solely on the basis of the commencement of bankruptcy proceedings or the debtor's failure to pay a prepetition debt. 11 U.S.C. § 366(a). Once the initial thirty days have expired, a utility company may discontinue services if the debtor has not provided the utility company with "adequate assurance of payment for utility services that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).

7. By this Motion, the Debtors respectfully request entry of interim and final orders, pursuant to sections 105(a) and 366 of the Bankruptcy Code, in the forms attached hereto as ***Exhibit A*** and ***Exhibit B***: (a) prohibiting the Utility Companies from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any outstanding amounts for services rendered prepetition, or any perceived inadequacy of the Debtors' proposed adequate assurance; (b) determining that the Utility Companies have received adequate assurance of payment for future Utility Services; (c) approving procedures whereby the Utility Companies may request additional or different assurances beyond those set forth in this Motion; and (d) approving procedures for resolving objections by the Utility Companies.

## PROPOSED ADEQUATE ASSURANCE

8. The Debtors intend to pay their undisputed postpetition obligations to the Utility Companies on a timely basis, in accordance with their prepetition practices, and have the

6

ability to do so. As of the Petition Date, the Debtors are holding significant quantities of cash and cash equivalents, which will be more than sufficient to make postpetition payments to the Utility Companies, and these obligations are reflected in the Debtors' proposed budget submitted in connection with their request to use cash collateral during the Chapter 11 Cases.

9. Consistent with section 366(c)(1)(A) of the Bankruptcy Code, which defines the phrase "assurance of payment" to include, among other things, a cash deposit, the Debtors propose to deposit an amount equal to two weeks of Utility Services, calculated as a historical average over the past 52 weeks (each, an "***Adequate Assurance Deposit***") into one segregated bank account designated for the Adequate Assurance Deposits (the "***Adequate Assurance Deposit Account***") on behalf of all Utility Companies identified in ***Exhibit C*** within 20 days of the Petition Date.

10. The Debtors' Utility Services range from $750,000 to $1,000,000 per month. The range in Utility Services is attributable to the fluctuating price of natural gas and the company's productivity in any given month. The company's Utility Services also increase in the winter months. As such, the Debtors' average monthly Utility Services are approximately $875,000. The Debtors propose to deposit $437,500, half of the monthly average, into the Adequate Assurance Deposit Account within 20 days of the Petition Date.

11. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "***Proposed Adequate Assurance***"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

## THE ADEQUATE ASSURANCE PROCEDURES

12. To address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtors propose that the following procedures (the "*Adequate Assurance Procedures*") be adopted:

(a) Any Utility Company desiring assurance of future payment for Utility Services beyond the Proposed Adequate Assurance must serve a request (an "*Additional Assurance Request*") so that it is **received** by the Debtors by no later than 30 days after the Petition Date (the "*Request Deadline*") at the following addresses:

    (i) Almatis Inc., 501 West Park Road, Leetsdale, PA 15056 (Attn: Tim McKenna); and

    (ii) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166 (Attn: Michael A. Rosenthal, Esq., Janet M. Weiss, Esq., and Matthew K. Kelsey, Esq.).

(b) Any Additional Assurance Request must: (i) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (ii) be made in writing; (iii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iv) describe any deposits or other security currently held by the requesting Utility Company; (v) explain whether the Debtors prepay for the Utility Company's services; (vi) describe any payment delinquency or irregularity by the Debtors for the postpetition period, if any; and (vii) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

(c) Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have the greater of (i) 20 days from the receipt of such Additional Assurance Request or (ii) 40 days from the Petition Date (collectively, the "*Resolution Period*") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtors and the applicable Utility Company without application to or approval of the Court.

(d) The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments, other forms of security, or any combination of the above, if the Debtors believe such additional assurance is reasonable. If the Debtors and requesting Utility Company resolve the Additional Assurance Request, the Debtors may, by mutual agreement with the requesting Utility Company and without further order of the Court,

reduce the Adequate Assurance Deposit by an amount not exceeding the requesting Utility Company's estimated two-week utility expense.

(e) If the Debtors determine that an Additional Assurance Request is not reasonable, and the parties are not able to resolve such request during the Resolution Period, then during or immediately after the Resolution Period, the Debtors will request a hearing before the Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "***Determination Hearing***"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.[4]

(f) Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

(g) Other than through the Objection Procedures set forth below, any Utility Company that does not comply with the Adequate Assurance Procedures is deemed to find the Proposed Adequate Assurance satisfactory to it and is prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of any unpaid prepetition charges, or requiring additional assurance of payment beyond the Proposed Adequate Assurance.

**OBJECTIONS TO THE PROPOSED ADEQUATE ASSURANCE PROCEDURES**

13. The Debtors request that any Utility Company not satisfied with the Adequate Assurance Procedures set forth herein and wishing to object to such Adequate Assurance Procedures comply with the following procedures ("***Objection Procedures***"):

(a) A Utility Company that desires to object to the Adequate Assurance Procedures must file an objection (a "***Procedures Objection***") with the Court and serve such Procedures Objection so that it is **received** by the Debtors within 10 days of the Petition Date at the following addresses:

    (i) Almatis Inc., 501 West Park Road, Leetsdale, PA 15056 (Attn: Tim McKenna); and

---

[4] Section 366(c)(3)(A) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . ." 11 U.S.C. § 366(c)(3)(A).

9

>           (ii)    Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New
>                   York, NY 10166 (Attn: Michael A. Rosenthal, Esq., Janet
>                   M. Weiss, Esq., and Matthew K. Kelsey, Esq.).

    (b)     Any Procedures Objection must (i) be made in writing; (ii) set forth all location(s) for which utility services are provided and the relevant account number(s); (iii) describe any deposits or other security currently held by the objecting Utility Company; (iv) explain whether the Debtors prepay for the Utility Company's services or what payment terms presently apply to the Debtors; (v) explain why the objecting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (vi) identify and explain the basis of the Utility Company's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code.

    (c)     The Debtors, in their discretion, may resolve any Procedures Objection by mutual agreement with the objecting Utility Company and without further order of the Court, and may, in connection with any such resolution and in their discretion, provide a Utility Company with assurance of future payment, including, but not limited to, cash deposits, prepayments, or other forms of security, if the Debtors believe such assurance of payment is reasonable. If the Debtors and objecting Utility Company resolve the Procedures Objection, the Debtors may, by mutual agreement with the objecting Utility Company and without further order of the Court, reduce the Adequate Assurance Deposit by an amount not exceeding the objecting Utility Company's estimated two-week utility expense.

    (d)     If the Debtors determine that a Procedures Objection is not reasonable and are not able to reach a prompt alternative resolution with the objecting Utility Company, the Procedures Objection will be heard at the Final Hearing.

    (e)     Any Utility Company that does not timely file a Procedures Objection is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

## SUBSEQUENT MODIFICATION OF THE UTILITY COMPANIES LIST

    14.     The Debtors request that they be allowed, without further order of the Court, to supplement the Utility Companies List if any Utility Company has been inadvertently omitted from the list (the "*Additional Utility Company*"). If the Debtors determine that the Utility Companies List should be supplemented, the Debtors will as soon as practicable file with the Court an amendment to *Exhibit C* adding the name of any Additional Utility Company (the "*Supplement*"). The Debtors will then serve by email or by facsimile transmission (or, where the Debtors do not have the email address or fax number of a Utility Company, by First

Class Mail) a copy of this Motion and the signed Interim or Final Order on any Additional Utility Company.

15. The Debtors request that any Additional Utility Company be subject to the terms of the Interim and Final Orders, including the Adequate Assurance and Objection Procedures. The Additional Utility Company shall have 30 days from the date of service of this Motion and the Interim and Final Orders to make an Additional Assurance Request as outlined above. The Additional Utility Company may also serve a Procedures Objection as outlined above, except that the Procedures Objection must be received by the Debtors and their counsel within five days of the Final Hearing. Should an Additional Utility Company be added to the Utility Companies List, the Debtors will not be required to increase the amounts of deposit in the Adequate Assurance Deposit Account.

**BASIS FOR RELIEF REQUESTED**

**A. Section 366 of the Bankruptcy Code Grants the Court the Discretion to Determine the Adequacy of the Debtors' Proposed Assurance**

16. Congress enacted section 366 of the Bankruptcy Code to protect a debtor from immediate termination of utility services after filing for bankruptcy, while at the same time providing the utility companies with adequate assurance of payment for postpetition utility services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Section 366 defines "assurance of payment" to mean several forms of security, including, cash deposits, letters of credit, and prepayment of utility services. 11 U.S.C. § 366(c)(1)(A). Section 366(c)(1)(B) explicitly excludes, however, offering administrative expense priority as adequate assurance of payment.

17. While section 366(c) of the Bankruptcy Code sets forth what constitutes adequate assurance of payment, the bankruptcy court nonetheless retains discretion to determine

what, if any, adequate assurance is necessary to satisfy section 366's requirement that assurance of payment must only be adequate. *See In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("The bankruptcy courts are in agreement that section 366(b) vests in the bankruptcy court the exclusive responsibility for determining the appropriate security which a debtor must provide to his utilities to preclude termination of service for non-payment of pre-petition utility bills."); *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 198 (Bankr. N.D. Ohio 1983) (same). Accordingly, a court is not required to give the utility companies an "absolute guarantee of payment," or require that the adequate assurance take the form of a deposit, bond, letter of credit, or similar security. *In re Caldor, Inc. – N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996), *aff'd*, 117 F.3d 646 (2d Cir. 1997).

18. Rather, in considering the facts and circumstances of each case, the Court must only ensure that the utility is not subject to an unreasonable risk of non-payment for postpetition services. *See In re Adelphia*, 280 B.R. at 80; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). The Court, therefore, must strike a careful balance between satisfying the utility company's need for adequate assurance and ensuring that the debtor supply no more than what is adequate, as the debtor has a conflicting need to conserve financial resources. *See In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) (holding that to require the debtor to allocate valuable liquidity to provide further "adequate assurance" to satisfy a utility's obligations before their amount has been fixed would prejudice the entirety of the debtor's unsecured creditor body for the benefit of a single one).

19. In determining whether a utility is subject to an unreasonable risk of non-payment, the Court may consider whether the utility would seek the same additional security

from another non-bankruptcy debtor. *See In re Caldor, Inc. – N.Y.*, 199 B.R. at 3 (finding that the utility companies were not seeking additional security for an adequate assurance of future payment, but solely because their monopoly position permitted them to capitalize on the debtors' bankruptcy filing); *Whittaker v. Phila. Elec. Co. (In re Whittaker)*, 84 B.R. 934, 941-42 (Bankr. E.D. Pa. 1988), *aff'd*, 92 B.R. 110 (E.D. Pa. 1988), *aff'd*, 882 F.2d 791 (3d Cir. 1989). The Court may not consider, however, the absence of security before the petition date, the debtor's history of timely payments, or the availability of an administrative expense priority. 11 U.S.C. § 366(c)(3)(B).

B. **The Debtors' Proposed Adequate Assurance Is Routinely Upheld as Adequate By Courts in this District**

20. Given that this Court has the discretion to determine the assurance necessary to satisfy the Utility Companies' needs, the Debtors submit that the Proposed Adequate Assurance is more than adequate to ensure that the Debtors will meet their postpetition utility obligations. Indeed, the Debtors' proposal comports with a recent case decided after the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and numerous orders entered by this Court. *See, e.g., In re Circuit City Stores, Inc.*, 2009 Bankr. Lexis 237 (E.D. Va. Jan. 14. 2009); *In re Chrysler, LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 28, 2009) [Docket No. 2794]; *In re Lyondell Chemical Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 28, 2009) [Docket No. 508]; *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 2, 2008) [Docket No. 187]; *In re PLVTZ, Inc.*, Case No. 07-13532 (REG) (Bankr. S.D.N.Y. Dec. 13, 2007) [Docket No. 349]; and *In re Silicon*

*Graphics, Inc.*, Case No. 06-10977 (ALG) (Bankr. S.D.N.Y. May 25, 2006) [Docket No. 121].[5]

21. For example, in *Circuit City*, the debtors proposed that they establish a segregated bank account containing blocked funds in an amount equal to approximately two weeks of utility services from all of their utility companies. 2009 Bankr. Lexis 237, at *8. The court found that the proposed assurance constituted an assurance of payment consistent with the requirements of Bankruptcy Code section 366(b) because the segregated bank account was the equivalent of a letter of credit. *Id.* at *13. The *Circuit City* court, in granting the motion, stated that, "[t]he Procedures set forth in the Utility Order serve to streamline the reorganization process and do not adversely impair the rights of any utility company." *Id.* at *22-23. *See also In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883-84 (Bankr. E.D.N.Y. 1986) ("The amount of security deposit should bear a reasonable relationship to expected or anticipated utility consumption by a debtor. Here, we believe that a deposit in an amount equal to Coastal's estimated electric power consumption over the ensuing one month, subject to future adjustment if changed circumstances so warrant, provides BNYDC with adequate assurance of payment within the intent and meaning of 11 U.S.C. § 366(b).")

22. Here, the Debtors are proposing the same type of assurance as proposed in *Circuit City* and believe that the Adequate Assurance Deposit Account, together with the proposed Procedures, strikes a fair balance between the rights of the Utility Companies and the interests of the Debtors' estates. The Debtors maintain plants and operations throughout the United States, and if the Utility Companies altered, refused, or discontinued service, even for a brief period, the Debtors' business operations would be severely disrupted. Such disruption

---

[5] The Debtors have not annexed copies of the unreported orders cited herein because of their size. Copies of these orders, however, are available upon request of the Debtors' counsel, including at the hearing to consider the Motion.

could have a devastating impact on the Debtors' business operations and revenues, thereby jeopardizing the Debtors' ability to successfully reorganize. In contrast, the Utility Companies will have access to a cash deposit equal to two weeks worth of Utility Services and may access this deposit in the event the Debtors' fail to timely pay their postpetition utility charges. It is therefore critical that this Court grant the Debtors' motion and prohibit the Utility Companies from altering, refusing, or discontinuing the Debtors' necessary Utility Services during this reorganization.

**IMMEDIATE RELIEF IS NECESSARY
TO AVOID IMMEDIATE AND IRREPARABLE HARM**

23. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R. Bankr. P. 6003(b). As described herein, the Debtors will suffer immediate and irreparable harm without Court authorization to pay all undisputed invoices for Utility Services rendered by the Utility Companies to the Debtors after the Petition Date, and to provide the Adequate Assurance Deposit for the benefit of the Utility Companies. If the relief is not granted, the Debtors' operations that depend on the constant and reliable provision of Utility Services may suffer a significant disruption, reducing their revenue and profits, and thereby causing immediate and irreparable harm to the Debtors' estates. Accordingly, the Debtors submit that Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF BANKRUPCY RULES 6004(a) AND (h)

24. To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).

25. Furthermore, to implement the foregoing immediately, the Debtors respectfully request a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the proposed payment of all undisputed invoices for Utility Services rendered by the Utility Companies to the Debtors after the Petition Date, and the Adequate Assurance Deposit are is essential to prevent potentially irreparable damages to the Debtors' business operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

26. No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases. The Debtors have provided notice of filing of the Motion by electronic mail and/or facsimile, and overnight mail to: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Debtors' 50 largest unsecured creditors on a consolidated basis; and (c) counsel to the agents for the Debtors' prepetition senior credit facility, second lien credit facility, mezzanine credit facility, and junior mezzanine credit facility. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required. A copy of the Motion is also available on the website of the Debtors' notice and claims agent, Epiq Bankruptcy Solutions, LLC, at

http://chapter11.epiqsystems.com/almatis.

## NO PRIOR REQUEST

27. No prior motion for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 30, 2010

Respectfully submitted,

/s/ Michael A. Rosenthal
Michael A. Rosenthal (MR-7006)
Janet M. Weiss (JW-5460)
Matthew K. Kelsey (MK-3137)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

PROPOSED ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION